CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JAN 12 2022

JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | | |
|---|---|---|
| SHERRI H.,[1] | ) | |
| Plaintiff, | ) | Civil Action No. 4:20-cv-00055 |
| | ) | |
| v. | ) | REPORT & RECOMMENDATION |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | By:    Joel C. Hoppe |
| SECURITY, | ) |         United States Magistrate Judge |
| Defendant. | ) | |

Plaintiff Sherri H. asks this Court to review the Commissioner of Social Security's final decision denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381–1383f. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). Having considered the administrative record, the parties' filings, and the applicable law, I find that the decision is supported by substantial evidence. Accordingly, I respectfully recommend that the presiding District Judge affirm the decision.

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, a court reviewing the merits of the Commissioner's final decision asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 98–100 (1991)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review considers the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *accord* 20 C.F.R. §§ 404.1505(a), 416.905(a).[2] Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe impairment that satisfies the Act's duration requirement; (3) has an impairment that meets or equals an impairment listed in the Act's

---

[2] Unless otherwise noted, citations to the Code of Federal Regulations refer to the version in effect on the date of the ALJ's written decision.

regulations; (4) can return to his or her past relevant work based on his or her residual functional

capacity; and, if not (5) whether he or she can perform other work. *See Heckler v. Campbell*, 461

U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. §§

404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof through step four. *Lewis*,

858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not

disabled. *See id.*

## II. Procedural History

Sherri applied for DIB and SSI in February 2018, *see* Administrative Record ("R.") 184–

90, 191–200, ECF No. 13, alleging disability because of hypertension, bilateral knee pain, and

anxiety, R. 115, 127. She alleged that she became disabled on August 15, 2016. *Id.* Disability

Determination Services ("DDS"), the state agency, denied her claims initially in April 2018, R.

114–25, and upon reconsideration that August, R. 126–38. On August 20, 2019, Sherri appeared

with counsel and testified at an administrative hearing before ALJ Theodore Kennedy. *See* R.

97–108. A vocational expert ("VE") also testified at this hearing. R. 108–11.

ALJ Kennedy issued an unfavorable decision on September 16, 2019. *See* R. 10–20. He

found that Sherri suffered from severe impairments of arthritis in the knees and obesity, R. 12,

and that her anxiety was a non-severe impairment, R. 13–14. Sherri's severe impairments did not

meet or equal the applicable Listing, primarily because she did "not use a prescribed assistive

device for ambulation or balance." R. 15 (citing 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.02). ALJ

Kennedy then evaluated Sherri's residual functional capacity ("RFC") and found that she could

perform a limited range of "light" work.[3] R. 15. She could:

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of
objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). A person who can meet these
relatively modest lifting requirements can perform "[t]he full range of light work" only if he or she can
also "stand or walk for up to six hours per workday or sit 'most of the time with some pushing and pulling

lift and carry 10 pounds frequently and 20 pounds occasionally; sit six hours in an eight hour workday; stand and walk for about four hours in an eight hour workday; constantly push or pull at the light level of exertion; occasionally climb ramps or stairs; occasionally balance, stoop, kneel, crouch, or crawl; never climb ladders, ropes, or scaffolds; never be exposed to unprotected heights; [and] occasionally be exposed to moving mechanical parts, extreme cold, or vibrations.

*Id.* Based on this RFC finding and the VE's testimony, ALJ Kennedy concluded that Sherri could not return to her past relevant work as a production worker. R. 18 (citing R. 108–09). Nonetheless, he found that Sherri could perform certain "light" jobs existing in significant numbers in the national economy (office helper, garment sorter, garment folder). R. 19 (citing R. 109–10). ALJ Kennedy therefore found Sherri "not disabled" from August 15, 2016, through September 16, 2019. R. 20. The Appeals Council denied Sherri's request for review, thereby making ALJ Kennedy's decision "the final decision of the Commissioner" denying her DIB and SSI claims. R. 1–3. This appeal followed.

### III. Discussion

Sherri's arguments on appeal primarily challenge ALJ Kennedy's RFC determination. *See generally* Pl.'s Br. 5–7, ECF No. 20. She first argues that ALJ Kennedy rejected her allegations of debilitating pain based on an erroneous finding that during a consultative examination with Okwuchukwu Obi, M.D., in July 2018, Sherri demonstrated "no significant

---

of arm or leg controls.'" *Neal v. Astrue*, Civ. No. JKS-09-2316, 2010 WL 1759582, at *2 (D. Md. Apr. 29, 2010) (quoting 20 C.F.R. § 404.1567(b)); SSR 83-10, 1983 WL 31251, at *5–6 (Jan. 1, 1983). An RFC that allows the claimant to lift up to twenty pounds at one time, but restricts standing/walking to fewer than six hours during an eight-hour workday is often characterized as permitting a "limited" range of light work because the person's capacities for standing/walking fall in between what is needed to do sedentary work, which typically requires only two hours standing/walking in an eight-hour day, and what is needed to perform the full range of light work. *Neal*, 2010 WL 1759582, at *2 (explaining that a four-hour standing/walking restriction "exceed[s] the definition of sedentary work" because it permits the claimant to "stand or walk for more than two hours per workday," but "fall[s] short of the full range of light work because [the claimant] cannot stand or walk for six hours per workday").

ambulatory or lifting difficulties" insofar as Dr. Obi's[4] report documented that Sherri had

"normal" strength, flexion, extension, and reflexes in both knees, no joint swelling or tenderness

in the lower extremities, and she "could hop on either foot bilaterally, rise from a sitting position

without assistance, walk on her heels and toes, and perform tandem walking," R. 17. *See* Pl.'s

Br. 5 (citing R. 17, 496–97). Sherri also argues that ALJ Kennedy erred in rejecting Dr. Obi's

medical opinion that she "could stand and walk no more than about 30 minutes at a time without

having to take a break due to knee pain." *Id.* at 7 (citing R. 18).

A.    *Summary*

    1.    *Relevant Medical Evidence*

    In April 2016, Sherri saw Glenn Meadows, M.D., complaining of bilateral knee pain and

seeking a refill for her anxiety medication. R. 371–72. At that time, Sherri said that standing on

concrete for prolonged periods, as required by her job, contributed to her knee pain, and she

reported "some swelling posteriorly [and] some swelling in the leg." R. 371. Examination

revealed "mild tenderness bilaterally" in her knees and trace edema in her leg. *Id.* Dr. Meadows

ordered X-rays of Sherri's knee, *see* R. 372, and instructed her to take Aleve as needed for pain,

R. 371.

    Sherri saw Dustin Allen, PA-C, in late May 2016 for complaints of bilateral knee pain. R.

373–75. She stated that her pain had been ongoing for about two weeks, and she requested

injections because she could not "take the pain any longer." R. 373. On examination, Sherri

displayed bilateral knee tenderness, +1 bilateral effusion, and crepitus in both knees, as well as

nonpitting edema in her ankles and hands. R. 373. PA-C Allen assessed knee pain and edema,

prescribed Lasix, Prednisone, and Meloxicam, and ordered injection therapy. R. 374.

---

[4] ALJ Kennedy refers to Okwuchukwu Obi, M.D, as "Dr. Okwuchukwu." R. 18. As Sherri observes in her brief, Pl.'s Br. 1, however, the record suggests he is properly referred to as Dr. Obi, *see* R. 499.

In July 2016, Sherri presented to Peter Caprise, M.D., for an evaluation of her knees. R. 303–05. The patient history noted that Sherri had "been treated with a steroid taper and NSAIDs with mild relief of her symptoms," but that she had "continued cracking in the knees when ambulating and exacerbation of her symptoms with increased activities." R. 303. Dr. Caprise observed that X-rays of Sherri's knees taken in April 2016 "show[ed] no fracture or degenerative changes." R. 304. On examination, Sherri had no edema, negative leg roll bilaterally, "[t]ender[ness] over the superior and inferior pole of the patella bilaterally," full range of motion, and negative McMurray's test. *Id.* He diagnosed Sherri with chondromalacia patellae of both knees, R. 303, and referred her to physical therapy, R. 304.

In October 2016, Sherri presented to the emergency department of the Lynchburg Hospital, complaining of a constant bilateral knee pain that had started two months earlier. R. 321. She reported that injection therapy had provided temporary relief, but it had since "worn off." *Id.* The attending physician noted swelling in her knees, but no obvious deformity, and no bruising or redness. *Id.* On examination, she displayed a full active range of motion throughout all extremities, no tenderness, and normal appearance, but had "bilateral patellar grind with mild swelling [in] both knees" and "right sided popliteal fullness." R. 322. She was discharged to home in stable condition, but she said she would be unable to follow-up with her previous physician because she had recently lost her insurance. R. 325. Sherri returned to the emergency department in December 2016 expressing concern over high blood pressure readings, but she did not report any pain in her knees and denied the presence of edema. R. 338. On examination, she displayed a full active range of motion in all extremities and 5/5 strength in all major muscle groups. R. 333.

Sherri saw PA-C Allen again in June 2017, seeking refills of her blood pressure medication and requesting anti-inflammatory medication for her knee pain. R. 386–87. Sherri stated that she had chronic knee pain and needed knee replacements, but she did not seek a referral to a specialist because she was unable to afford it. R. 387. PA-C Allen examined Sherri's knees and observed that her popliteal pulses were strong, she had a "significant amount of crepitus," and, although she could flex and bend her knees, she grimaced while doing so. *Id.* Sherri presented to the emergency department of Lynchburg Hospital in March 2017, again complaining that she had experienced knee pain for several weeks after her injections "wore off." R. 343. She stated that she needed knee replacements, but she was unable to afford them. *Id.* On examination, Sherri had a normal range of motion in all four extremities, her distal pulses were normal, and her knees were not significantly tender to palpation, but they had "significant crepitus." R. 344. Notes indicated that Sherri had "failed" physical therapy and "ortho therapies" and that she was "not the ideal candidate" for total knee arthroplasty given her age. *Id.* Sherri requested a referral to pain management, which the attending physician thought was "appropriate in her case." *Id.* She was diagnosed with chronic bilateral knee pain and osteoarthritis of the knees. *Id.* She was discharged in stable condition, could ambulate at discharge, and was referred to pain management. R. 344–45.

Sherri again presented to the emergency room in November 2017. R. 446–52. She said she began experiencing knee pain the day prior and requested injections, stating that she had experienced similar episodes in the past. R. 448. She also complained that her pain had begun spreading to her ankles and that it was exacerbated by movement. R. 449. On examination, Sherri had normal active and passive full range of motion in all extremities, tenderness to palpation of the joint line, no ligamentous laxity in the knees, and minimal swelling over her

knees. *Id.* In December, Sherri saw Matthew Tatom, D.O., for a follow-up related to her hypertension and anxiety. R. 470. There were no remarkable examination findings and "overall she [was] functioning well." *Id.*

In July 2018, Dr. Obi performed a consultative examination of Sherri. R. 494–99. Sherri alleged that she had a constant, achy pain in her knees that caused weakness, stiffness, and swelling and radiated to her shins. R. 494. Her pain was 4/10 on the day of the exam, was typically 6/10, and was increased by sitting, standing, and walking. *Id.* Sherri had a "steady, slow gait," but she "did not come in with an assistive device," R. 496, and she had "normal knee strength bilaterally" on exam, R. 498. *See also* R. 496–97 (normal muscle tone, bulk, and strength with full range of motion throughout). Sherri's musculoskeletal examination further revealed:

> No joint swelling, erythema, effusion, or deformity. There was bilateral knee pain noted on exam. The claimant was able to button, and unbutton a shirt, pick up a coin from a table, grasp a pen, and write a sentence, lift and carry, and handle light objects. The claimant was able to squat and rise from that position with difficulty. The claimant was able to rise from the sitting position without assistance and had difficulty getting up and down from the exam table. The claimant was able to walk on heels and toes. Tandem walking was normal and the claimant could hop on either foot bilaterally. The claimant can dress and undress adequately well. The claimant was cooperative and gave good effort during the examination.

R. 497. Dr. Obi also opined on Sherri's functionality. R. 499. Dr. Obi found that she could "be expected to sit normally in an 8-hour workday with normal breaks." *Id.* She could "be expected to stand 30 minutes, and walk 30 minutes, at a time in an 8-hour workday before requiring a break due to bilateral knee pain." *Id.* She did "not need an assistive device with regards to short and long distances and uneven terrain." *Id.* Sherri could "be expected to carry 20 pounds frequently and 25 pounds occasionally." *Id.* She had "no limitations" on postural activities like "bending, stooping, crouching, [and] squatting," but she would "be able to perform these

[activities] occasionally due to bilateral knee pain." *Id.* Sherri had no manipulative or environmental limitations. *Id.*

In February 2019, Sherri established care with Sheree Marilla, N.P., for her anxiety and hypertension. R. 602–03. Sherri reported that she had recently attempted to work as a waitress, but she was unable to sustain such employment because of her knee pain. R. 603. On exam, Sherri displayed no edema and normal tone, strength, and gait on examination. *Id.* Although the record demonstrates that Sherri continued to be treated for anxiety, hypertension, and insomnia after February 2019, she did not seek specific treatment for her knee pain after that point, although knee pain was listed as an ongoing problem in July 2019, R. 628, and Sherri said that her chronic knee pain was a contributing stressor and that she relied on her boyfriend for support at a psychiatric visit in June of that year, R. 637.

In April 2018, DDS expert Richard Surrusco, M.D., issued an opinion as to Sherri's RFC, R. 122–23, and in August of that year, Daniel Camden, M.D., issued an opinion on reconsideration review as to Sherri's RFC, R. 129–31. Each found that Sherri's exertional limitations rendered her able to lift and/or carry ten pounds frequently and twenty pounds occasionally; to stand and/or walk a total of four hours; and to sit for about six hours of an eight-hour workday. R. 117, 122, 130, 136. Sherri had unlimited ability to push and/or pull in her upper extremities, but her chondromalacia limited her to occasional pushing or pulling with her lower extremities. *Id.* They determined that she could occasionally crouch; crawl; and climb ramps, stairs, ladders, ropes, or scaffolds; and could frequently balance, stoop, and kneel. R. 118, 123, 130, 136. While Dr. Surrusco opined that Sherri did not suffer from any environmental limitations, R. 118, 123, Dr. Camden concluded that she should avoid even concentrated exposure to extreme cold, vibrations, and hazards, R. 131, 137.

2.    *Sherri's Statements*

In April 2018, Sherri submitted a Function Report to DDS. *See* R. 222–28. Sherri

explained that the "swelling, aching, [and] throbbing" in her knees limited her functional

abilities. R. 222. Her typical day mostly consisted of "staying in bed and laying on [the] couch

with [her] legs pro[pped] up," and she had trouble with personal care. R. 223. She could make

simple meals, but she could not clean or do yardwork like she used to. R. 224. She could drive,

but she only did so about once a week for thirty minutes to go to the grocery store. R. 225. Sherri

could not lift more than the weight of a gallon of milk or walk long distances, and her pain

improved through the application of a heating pad or ice packs. R. 227. Sherri submitted a

second Function Report to DDS in May 2018. *See* R. 253–60. She alleged similar functional

limitations resulting from her knee impairments and added that she was "[g]etting ready to go to

SSI this week to sign up for [a] cane due to [her] right knee giving out as [she] walk[s]." R. 259.

In August 2019, Sherri testified before ALJ Kennedy. *See* R. 98–107. She testified that

she had not worked since her alleged onset date and that she currently resided with her

boyfriend. R. 98. Issues with the cartilage in her knee made her "bones rub together" and, along

with swelling in her ankles, made her unable to work. R. 101. She was also unable to exercise or

do daily activities to the extent she used to. R. 101–02. Sherri testified that she had tried injection

therapy, but not physical therapy, and that the most effective forms of relief were rest and

elevation in conjunction with a heating pad or hot bath. R. 102–03. She could cook simple meals,

do laundry, and make the bed, but she was unable to take out the garbage, did not go shopping,

and could lift no more than a carton of milk. R. 106. Sherri also recounted falls she had

experienced because of her knee problems. R. 107.

*B.*     *The ALJ's Decision*

In determining Sherri's RFC, ALJ Kennedy summarized Sherri's subjective statements

regarding her symptoms,[5] R. 16, summarized the medical evidence, R. 16–17, and evaluated the

medical opinion evidence of record, R. 17–18. He found that Sherri's "medically determinable

impairments could reasonably be expected to cause the alleged symptoms," but that her

"statements concerning the intensity, persistence, and limiting effects of these symptoms [were]

not entirely consistent with the medical evidence and other evidence in the record," for three

reasons. *See* R. 17. ALJ Kennedy then explained:

> [T]he recent consultative examination revealed no significant ambulatory or
> lifting difficulties. To illustrate, the claimant could ambulate around the exam
> room, and the claimant had normal bilateral knee strength, normal knee flexion
> and extension, and the examination revealed no joint swelling or redness. Further,
> her reflexes were normal, including her patellar and ankle reflexes, and she had
> 5/5 strength in her upper and lower extremities. Lastly, the claimant could hop on
> either foot bilaterally, rise from a sitting position without assistance, walk on her
> heels and toes, and perform tandem walking. Additionally, despite emergency
> room visits, those examinations generally reveal no significant abnormalities to
> support more restrictive limitations or support the claimant's allegations. Further,
> the claimant has not undergone surgical intervention or has undergone physical
> therapy for her knees, and the claimant testified that she receives pain relief from
> a hot bath or a heating pad. Lastly, the claimant testified that she drives, can do
> her laundry, make her bed, and cook meals.

*Id.* (internal citations omitted).

ALJ Kennedy then evaluated the medical opinions of record. R. 18. He found the

opinions of the DDS experts persuasive and "consistent with the record because although

[Sherri] is seen at the hospital with bilateral knee pain and examinations at times reveal mild

swelling, an altered gait, bilateral grind/crepitus, and tenderness, the record overall routinely

reveals 5/5 lower and upper extremity strength and reveals no prescribed use of an assistive

---

[5] "Symptoms" are the claimant's own description of her medical condition. 20 C.F.R. §§ 404.1502(i),
416.902(n).

device for balance or ambulation." *Id.* ALJ Kennedy also found Dr. Obi's consultative opinion

persuasive, noting it was "generally consistent with the [DDS] consultants and overall consistent

with the record" for the reasons explained in his decision. *Id.* Contrary to Dr. Obi's opinion,

however, the ALJ concluded that Sherri "would be able to stand or walk longer than 30 minutes

due to normal bilateral knee strength, normal lower extremity strength, and [Sherri's] nonuse of

an assistive device for ambulation or balance referenced in the record." *Id.* ALJ Kennedy also

determined that "the 30 minute standing or walking limitations are not supported by Dr. [Obi's]

own examination findings." *Id.* Thus, as relevant here, ALJ Kennedy restricted Sherri to

lifting/carrying ten pounds frequently and twenty pounds occasionally; sitting for six hours, and

"stand[ing] and walk[ing] for about four hours," during an eight-hour workday; occasionally

balancing, kneeling, crouching, crawling, and climbing ramps and stairs, but never climbing

ladders, ropes, or scaffolds; and never working around unprotected heights. *See* R. 15. These

specific limitations "accommodate[d] safety concerns from [Sherri's] bilateral knee condition"

and resulting symptoms, "such as pain, an altered gait, mild swelling, tenderness, and bilateral

crepitus/grind." R. 17.

ALJ Kennedy ultimately determined that although Sherri could not return to her past

relevant work, she could perform certain jobs at the "light" exertional level existing in significant

numbers in the national economy, and thus was not disabled. R. 19–20.

C.    *Analysis*

Sherri challenges ALJ Kennedy's RFC determination. She first argues that he erred by

discrediting her allegations of pain based on an erroneous finding that her recent consultative

examination with Dr. Obi showed "no significant ambulatory or lifting difficulties." Pl.'s Br. 5

(quoting R. 17). She contends this finding is unsupported by the record, noting that Dr. Obi

observed that Sherri had a slow gait, difficulty rising from the squatting position, and difficulty getting up and down from the exam table. *Id.* Further, she argues that the ALJ did not consider her pain responses, such as the bilateral knee pain noted on examination by Dr. Obi and PA-C Allen's observation that although she could flex and bend her knees, she grimaced while doing so. *Id.* ("Of course, the ALJ may not have believed that [Sherri's] pain responses, as observed by Dr. Obi and Mr. Allen, were genuine. But if that were the case, he was required to say so, and to explain why he did not believe this pain evidence.").

* * *

A claimant's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting" for eight hours a day, five days a week despite his medical impairments and symptoms. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (emphasis omitted). It is a factual finding "made by the [ALJ] based on all the relevant evidence in the case record," *Felton-Miller v. Astrue*, 459 F. App'x 226, 230–31 (4th Cir. 2011), and it should reflect specific, credibly established "restrictions caused by medical impairments and their related symptoms" that affect the claimant's "capacity to do work-related physical and mental activities," SSR 96-8p, 1996 WL 374184, at *1, *2. *See Mascio v. Colvin*, 780 F.3d 632, 637–40 (4th Cir. 2015); *Reece v. Colvin*, 7:14cv428, 2016 WL 658999, at *6–7 (W.D. Va. Jan. 25, 2016), *adopted by* 2016 WL 649889 (W.D. Va. Feb. 17, 2016).

The regulations set out a two-step process for evaluating a claimant's alleged symptoms. *Lewis*, 858 F.3d at 865–66; 20 C.F.R. §§ 404.1529, 416.929. "First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms," *Lewis*, 858 F.3d at 866, "in the amount and degree[] alleged by the claimant." *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). Step One is a "threshold" inquiry, at which the "'intensity,

persistence, or functionally limiting effects' of the claimant's asserted pain" are not considered. *Id.* Assuming the claimant clears the first step of the *Craig* analysis, the ALJ moves on to Step Two. There, "the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit his ability," *Lewis*, 858 F.3d at 866, to work on a regular and continuing basis, *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015); *Hines*, 453 F.3d at 565; *see also* SSR 16-3p, 2016 WL 1119029, at *4 (Mar. 16, 2016). "The second determination requires the ALJ to assess the credibility of [subjective] statements about symptoms and their functional effects," *Lewis*, 858 F.3d at 866, after considering all the relevant evidence in the record, 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ must give specific reasons, supported by "references to the evidence," for the weight assigned to the claimant's statements. *Edwards v. Colvin*, No. 4:13cv1, 2013 WL 5720337, at *6 (W.D. Va. Oct. 21, 2013) (citing SSR 96-7p, 1996 WL 374186, at *2, *4–5 (July 2, 1996)). A reviewing court will uphold the ALJ's credibility determination if his articulated rationale is legally adequate and supported by substantial evidence in the record. *See Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 68 (4th Cir. 2014) (citing *Eldeco, Inc. v. NLRB*, 132 F.32 1007, 1011 (4th Cir. 1997)).

In assessing Sherri's RFC, the ALJ made a determination about the credibility of her reported symptoms and limitations. Sherri's challenge to the ALJ's credibility determination focuses on his analysis of several of Dr. Obi's observations and one part of his opinion. The ALJ did discuss Dr. Obi's findings and opinion, but he also identified other evidence in the record in analyzing Sherri's report of symptoms and limitations.

ALJ Kennedy found that Sherri's severe bilateral knee impairment, particularly in combination with her obesity, limits her functionally. R. 15; *see also* R. 17 ("These limitations also accommodate the effect that her obesity may have on her knees."). Nonetheless, he found

that she maintained the RFC to perform a limited range of "light" work that involved standing and walking for about four hours in an eight-hour workday and some postural limitations. *Id.* He reasoned, in part, that Sherri's "recent consultative examination revealed no significant ambulatory or lifting difficulties." R. 17. The ALJ also noted many of the specific findings Dr. Obi's consultative examination revealed suggesting that Sherri's impairment-related functional limitations may not have been as severe as alleged, including that she could ambulate around the exam room, showed normal bilateral knee strength, flexion and extension, could hop on either foot, and could walk on her heels and toes and perform tandem walking. *Id.* ALJ Kennedy also noted, consistent with the record, that "despite emergency room visits, those examinations generally reveal[ed] no significant abnormalities to support more restrictive limitations or support the claimant's allegations." *Id.*; *see, e.g.*, R. 322, 333, 344, 449, 507. He then looked to Sherri's arguably conservative course of treatment, reported relief, and activities of daily living as further support for his RFC finding. *Id.* ("Further, [Sherri] has not undergone surgical intervention or has undergone physical therapy for her knees, and [she] testified that she receives pain relief from a hot bath or a heating pad. Lastly, [Sherri] testified that she drives, can do her laundry, make her bed, and cook meals." (spelling corrected)).[6] Sherri does not challenge that part of ALJ Kennedy's decision, and I find that the ALJ could properly rely on evidence in the record showing Sherri's daily activities and course of treatment as well as the observations and opinions of Sherri's medical providers in assessing the credibility of her reported symptoms. *Watlington v. Berryhill*, No. 4:16cv46, 2017 WL 7053988, at *12–15 (W.D. Va. Dec. 20, 2017); *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929 (c)(3).

---

[6] ALJ Kennedy's statement that "the claimant has not undergone surgical intervention or has undergone physical therapy for her knees" appears to result from a typographical error. The record contains no probative evidence that Sherri attended physical therapy, and she testified that she had not tried that modality. R. 102 ("Q. Have you tried physical therapy as well? A. No, I did not --.").

Sherri asserts that the ALJ erred in highlighting that her "recent consultative examination revealed no significant ambulatory or lifting difficulties." R. 17. She contends that this was error because she was observed to have bilateral knee pain, a slow gait, and difficulty rising from a squatting position and getting up and down from the exam table. Pl.'s Br. 5; *see* R. 497–99. ALJ Kennedy's discussion of Dr. Obi's examination findings was not as limited as Sherri contends. The ALJ acknowledged Dr. Obi's observations that Sherri had bilateral knee pain, slow gait, and difficulty getting up and down from the exam table, R. 17, and he balanced that evidence with evidence showing normal functioning—normal bilateral knee strength, flexion, and extension; no joint swelling or redness; normal patellar and ankle reflexes; full lower extremity strength; ability to hop on either foot bilaterally and rise from a seated position without assistance; ability to walk on heels and toes, and tandem walk, R. 17, 18. The ALJ discussed Dr. Obi's consultative examination, and he identified and reasonably balanced every relevant finding and opinion. *See McGuinness v. Colvin*, No. TMD 13-1573, 2014 WL 4854857, at *10 ("The duty of explanation is satisfied 'if a reviewing court can discern what the ALJ did and why he did it.'") (quoting *Piney Mtn. Coal Co. v. Mays*, 176 F.3d 753, 762 n. 10 (4th Cir. 1999)) (cleaned up).

Moreover, ALJ Kennedy reduced Sherri's RFC to account for these findings. He first found that "[b]ased on the evidence of record, certain limitations in the claimant's ability to perform work activities are warranted." R. 17. Specifically, he referenced Sherri's "bilateral knee condition, and the symptoms arising from her bilateral knee condition, such as pain, an altered gait, mild swelling, tenderness, and bilateral crepitus/grind" as concerns that required accommodation. *Id.* He concluded that Sherri was "limited to light work with additional environmental and postural limitations to accommodate safety concerns" arising from these symptoms. *Id.* Thus, not only did ALJ Kennedy consider these findings and explain his

16

reasoning, he also accounted for the findings he reasonably deemed credible in the RFC

determination.

Sherri argues that the ALJ erred by failing to recognize that pain itself can be disabling.

Pl.'s Br. 6–7. Her argument is not persuasive. The ALJ acknowledged Dr. Obi's observations

that Sherri exhibited pain symptoms, but the ALJ also identified other exam findings and

observations of Sherri's maneuvers during the consultative examination that showed her pain and

other symptoms were not disabling. *See* R. 17–18. Accordingly, I find that the ALJ's credibility

determination is legally adequate and supported by substantial evidence.

Next, Sherri asserts that ALJ Kennedy "gave an impermissible reason for discounting Dr.

Obi's opinion that [Sherri] can stand and walk no more than about 30 minutes at a time without

having to take a break due to knee pain." Pl.'s Br. 7. Specifically, she contends that "[i]t is error

to dismiss a physician's opinion on the ground that is it based, in part, on the claimant's pain

response (or lack of it) during examination." *Id.* at 8.

For claims filed after March 27, 2017, a "medical opinion" is a statement from a

"medical source"[7] about what a claimant can do despite her impairments and whether one or

more impairments causes limitations or restrictions in her ability to perform physical, mental,

and other work demands and to adapt to environmental conditions in the workplace. 20 C.F.R.

§§ 404.1513(a)(2)(i)–(iv), 416.913(a)(2). The ALJ "will not defer or give any specific

evidentiary weight, including controlling weight, to any medical opinion(s) or prior

administrative medical finding(s), including those from [a claimant's] medical sources." 20

---

[7] A "medical source" is "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law." 20 C.F.R. §§ 404.1502(d), 416.902(i).

C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must adequately explain whether and to what extent every medical opinion in the record is persuasive. *See id.* §§ 404.1520c(b), 416.920c(b). The regulations instruct that supportability and consistency are "the most important factors" and thus the ALJ must address those two factors in evaluating the persuasiveness of an opinion or a finding. *See id.* §§ 404.1520c(b)(2), (c)(1)–(2), 416.920c(b)(2), (c)(1)–(2). The ALJ may, but is generally not required to, explain how he or she considered other factors, including the medical source's specialization and relationship with the claimant. *Id.* §§ 404.1520c(c)(3)–(5), 416.920c(c)(3)–(5).

Here, ALJ Kennedy offered a valid basis for rejecting Dr. Obi's specific opinion that Sherri "can be expected to stand 30 minutes, and walk 30 minutes, at a time in an 8-hour work day before requiring a break due to bilateral knee pain," R. 499, based on both a lack of supportability and consistency. First, contrary to Sherri's assertion, ALJ Kennedy did not dismiss Dr. Obi's opinion because it was partly based on his observation that Sherri experienced knee pain. Pl.'s Br. 8 ("It is error to dismiss a physician's opinion on the ground that it is based, in part, on the claimant's pain response (or lack of it) during examination."). In fact, ALJ Kennedy found Dr. Obi's opinion persuasive overall, and many of the limitations ascribed to Sherri by Dr. Obi are reflected in the RFC determination. R. 18 ("The undersigned finds persuasive Dr. [Obi's] opinion."). Rather, ALJ Kennedy rejected only the thirty-minute standing/walking limitation, reasoning that Sherri "would be able to stand longer than 30 minutes due to normal bilateral knee strength, normal lower extremity strength, and [her] nonuse of an assistive device for ambulation or balance referenced in the record," and that "the 30 minute standing or walking limitations [were] not supported by Dr. [Obi's] own examination findings." *Id.*

ALJ Kennedy cited to medical findings appearing repeatedly throughout the record that could reasonably be found inconsistent with the thirty-minute standing/walking limitation, including "normal bilateral knee strength, normal lower extremity strength, and [Sherri's] nonuse of an assistive device for ambulation or balance." R. 18; *see also* C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) ("The more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be."). Nonetheless, Sherri contends that the standing/walking limitation was consistent with PA-C Allen's observation that she grimaced while bending her knees. Pl.'s Br. 5 (citing R. 387). While a grimace is indicative of pain, it is not necessarily indicative of pain so limiting as to render one unable to stand or walk more than thirty minutes before needing a break. *See Green v. Astrue*, No. 3:10cv764, 2011 WL 5593148, at *4 (E.D. Va. Oct. 11, 2011) ("An individual does not have to be pain-free in order to be found 'not disabled.'"). Moreover, ALJ Kennedy did reduce the amount of time Sherri could stand and/or walk during an eight-hour workday from the normal six hours to four hours, which is consistent with the DDS experts' medical opinions, R. 15, 17–18. *See Neal*, 2010 WL 1759582, at *2 (explaining that a four-hour standing/walking restriction "fall[s] short of the full range of light work because [the claimant] cannot stand or walk for six hours per workday").

Considering the record as a whole, ALJ Kennedy reasonably concluded that many of Dr. Obi's own examination findings and conclusions were inconsistent with his opinion that Sherri would require a break after thirty minutes of standing or walking. R. 18; *see also* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanation presented by a medical source are to support his or her medical opinion . . . the more persuasive the medical opinion . . . will be."). For instance, Dr. Obi's examination

19

revealed that Sherri did not use an assistive device to ambulate, had 5/5 strength in all major muscle groups, had symmetric patellar reflexes, could walk on her heels and toes and perform tandem walking, could rise from a seated position without assistance, could hop on either foot bilaterally, and had normal knee strength, flexion, and extension. R. 497. The combination of these findings provides a reasonable basis to cast doubt on the need for a thirty-minute limitation on standing or walking. *See Young v. Berryhill*, No. 2:16cv12085, 2017 WL 2374723, at *10 (W.D. Va. May 1, 2017) (approving ALJ's determination that a physician's opinion that a claimant was limited to two hours of walking and standing was "internally inconsistent," and noting the physician's findings that the claimant did not require an assistive device to ambulate for short and long distances and uneven terrain, had intact range of motion in his back and hips, and a steady, symmetric gait). Additionally, Dr. Obi opined that Sherri did "not need an assistive device with regards to short and long distances and uneven terrain," and that she "had no limitations on bending, stooping, crouching, squatting, and so on and . . . w[ould] be able to perform these occasionally." R. 499. The ALJ could reasonably determine that these findings are inconsistent with a thirty-minute standing or walking limitation. Accordingly, I find that ALJ Kennedy did not rely on an improper basis for rejecting Dr. Obi's opinion that Sherri would require a break after thirty minutes of standing or walking, and, thus, his decision is supported by substantial evidence.

## IV. Conclusion

For the foregoing reasons, I respectfully recommend that the presiding District Judge, **DENY** Sherri's Motion for Summary Judgment, ECF No. 19, **GRANT** the Commissioner's Motion for Summary Judgment, ECF No. 22, **AFFIRM** the Commissioner's final decision, and **DISMISS** this case from the Court's active docket.

**Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Michael F. Urbanski, Chief United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: January 12, 2022

Joel C. Hoppe
United States Magistrate Judge